LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN
Chief, Civil Litigation Division

CLAY R. SMITH, ISB # 6385
Deputy Attorneys General
Statehouse, Room 210
Boise, ID  83720-0010
Telephone:   (208) 334-2400
Facsimile:    (208) 854-8073
clay.smith@ag.idaho.gov
    Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUSSELL KNAPP, SANDRA KNAPP, As legal guardians of Jason Knapp, JANA SCHULTZ, as legal guardian of Toby Schultz,<br><br>    Plaintiffs,<br><br>v.<br><br>RICHARD ARMSTRONG, in his official Capacity as Director of the Idaho Department of Health and Welfare, LESLIE CLEMENT, in her official capacity As Medicaid Administrator of the Idaho Department of Health and Welfare,<br><br>    Defendants. | Case No. 1:11-cv-00307-BLW<br><br>**MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (DKT. 2)** |

## INTRODUCTION

Plaintiffs (collectively "Knapp") filed this action on July 5, 2011, alleging that implementation of a contract between the Idaho Department of Health and Welfare ("IDHW" or "Department") and Community Partnerships of Idaho, Inc. ("Community Partnerships") concerning the performance of the "affiliation" function for residential

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 1

habilitation services will violate the "freedom of choice" requirement in 42 U.S.C. § 1396a(a)(23). Dkt. 1. Section 1396a more generally details various provisions that must appear in any "State plan for medical assistance" under the Subchapter XIX of the Social Security Act—*i.e.*, the federal Medicaid Act. *See* 42 U.S.C. §§ 1396-1396w-5. The contract becomes effective on August 5, 2011. Its implementation will centralize the affiliation function in Community Partnerships. Currently, various "residential habilitation agencies" ("RHAs") perform that function. Knapp seeks to maintain his ability, and that of the putative class, to continue receipt of the affiliation function from RHAs other than Community Partnerships.

The Complaint contains two claims for relief: the first alleging a private right of action under § 1396a(a)(23), and the second alleging violation of the Supremacy Clause, U.S. Const. art. VI, cl. 2. Knapp also filed a motion for preliminary injunction under Fed. R. Civ. P. 65 on July 5, 2011, contending that "Plaintiffs are highly likely to succeed on the merits of their claim the contract violates the Medicaid Act because the Defendants have not received the waiver of Medicaid requirements which is a prerequisite to selective contracting for health services under Medicaid." Dkt. 2 at 1-2. The motion is set for hearing before this Court on July 26, 2011, together with a motion in a separate action, *Affiliates, Inc. v. Armstrong*, No. 1:09-cv-149 (D. Idaho) (Dkt. 61), that requests similar relief under 42 U.S.C. § 1396a(a)(30).

The preliminary injunction motion should be denied for three principal reasons:

• It is important to identify accurately the programmatic background relevant to the challenged administrative decision. Idaho has provided home and community-based services ("HCBS") for "residential habilitation" to adults with development disabilities pursuant to a waiver under Section 1915(c) of the Social Security Act ("1915 DD waiver"), 42 U.S.C. § 1396n(c), since 1992. Residential habilitation services are provided *directly* to the participant by either a "certified family home" ("CFH") or, when the participant resides in his or her own home, by an RHA. RHAs also play another role:

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 2

They assist CFHs through the affiliation function to structure and implement the habilitation services that the latter provide to their resident participants. The Community Partnerships' contract affects only this affiliation function and does not implement modification of Idaho's state Medicaid plan that, by virtue of 1915 DD waiver, has no applicability to residential habilitation medical assistance.

- The Department will submit an amendment to the 1915 DD waiver to transfer the affiliation function from its current status as an adjunct service provided to CFHs to an administrative function that, under the waiver, may be carried out by IDHW itself or, under department supervision, another public agency or private contractor. The application will request that the amendment take effect as of August 5, 2011. Determination of whether retroactive effect is appropriate is an administrative decision that is committed to the Centers for Medicare and Medicaid Services ("CMS"), and the preliminary injunctive relief sought by Knapp would pretermit CMS authority as such decision. This interference has important substantive effects. First, even were the 1915 DD waiver properly seen as a contract between Idaho and the CMS, the United States would be a required party under Fed. R. Civ. P. 19(a) insofar as Knapp seeks relief that would interfere with the CMS's ability to discharge its functions under that contract. The Federal Government's immunity against suit, however, precludes its joinder as a defendant. Second, and more significantly, principles of primary jurisdiction strongly counsel against this Court's injecting itself into the administrative process attendant to disposition of the waiver amendment application.

- Knapp has failed to establish the likelihood of irreparable harm from the transfer of the affiliation function to Community Partnerships. He mischaracterizes the "face-to-face" meeting component of the contract and asks this Court to assume that Community Partnerships will not carry out its duties under the agreement in a competent manner. The speculative nature of the alleged harm, together with the strong public interest in allowing federal and state agencies to bring their institutional expertise to bear

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 3

on the administration of the 1915 DD waiver program with unnecessary judicial oversight, balance strongly against preliminary injunctive relief.

## RELEVANT FACTUAL BACKGROUND

**A.** Idaho has offered certain services to adults with developmental disabilities under a 1915(c) home and community-based services ("HCBS") waiver to its Medicaid State Plan since 1992. Decl. of Paige Grooms ("Grooms Decl.") at ¶ 5. The waiver covers 15 categories of services, including "residential habilitation" that is defined in the waiver as "consist[ing] of an integrated array of individually-tailored services and supports furnished to eligible participants which are designed to assist them to reside successfully in their own homes, with their families, or alternate family homes." *Id.* § 10 and Ex. C; *accord* IDAPA 16.04.17.011.19. Medicaid-eligible participants are afforded the option of receiving residential habilitation under the waiver or receiving institutional services under the State Plan. Knapp and the class that he seeks to represent opted to receive residential habilitation under the waiver through residence at a CFH. Dkt. 1 ¶¶ 2, 10; *see also* Grooms Decl. ¶ 10.

CFHs are certified initially, and re-certified annually, by the Department. Grooms Decl. ¶¶ 6, 7. The "provider" of the residential habilitation is the individual who has received the CFH certification. *Id.* ¶ 7. Among the various certification requirements is the responsibility of the CFH provider to "affiliate" with a "residential habilitation agency" ("RHA") that will "provide oversight, training, and quality assurance *to the certified home provider*." IDAPA 16.03.10.705.01(emphasis added); *see* Grooms Decl. ¶ 7. The provider of the specified waiver service—*i.e.*, residential habilitation—therefore remains the CFH. *Id.* & Ex. C. The RHA requests reimbursement from the Department for "affiliation" services, while the CFH provider is reimbursed for "CFH services." Grooms Decl. ¶ 5.

Waiver-covered residential habilitation services, however, also can be provided by RHAs themselves to participants who opt to reside in their own homes. Grooms Decl.

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 4

¶ 10. This function is deemed to be "direct care or services" under IDAPA 16.03.10.705.01 and reimbursed under as "supported living" under the Department's claim forms. *Id.*; *see* IDAPA 16.03.10.706. The RHA is the "provider" of the service to the participant in this context. Grooms Decl. ¶ 10. RHAs, in short, can perform two functions—"affiliation" services to CFH providers and "supported living" services to participants who have elected to participate in the HCBS waiver program and reside in their own homes rather than in a CFH. *See id.* ¶ 9 (discussing greater relevance of certain RHA-related regulations to "supported living" services).

**B.** The Idaho Legislature has directed the Department to explore various alternatives to existing delivery systems for State Plan or waiver services that would lead to cost economies without sacrificing service quality. Grooms Decl. ¶ 13. One method identified by the Legislature is "selective contracting" under which the Department itself directly contracts with, *inter alia*, private parties to perform particular tasks. *Id.* The most recent codification of this legislative directive appears in Idaho Code § 56-261(1) that provides in part that "the current health care delivery system of payment to Medicaid health care providers on a fee for service basis does not provide the appropriate incentives and can be improved by incorporating managed care tools, including capitation and selective contracting, with the objective of moving toward an accountable health care system that results in improved health outcomes." The Department identified the "affiliation" function as one element of the 1915 DD waiver where direct contracting could achieve the goal of effecting cost economies and maintaining or improving service quality. *Id.* ¶ 14. Following a competitive bid process governed by Idaho procurement statutes (*e.g.*, Idaho Code §§ 67-5718), the Department executed a contract with Community Partnerships effective June 6, 2011, to provide affiliation services for purposes of the residential rehabilitation service category under the 1915 DD waiver. Dkt. 2-7 at 2. Community Partnerships will begin performing the affiliation function on August 5, 2011. Dkt. 2-8 at 1.

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 5

Aside from certain modifications to the Idaho Administrative Rules necessitated by the modification to the delivery method for affiliation assistance to CFH providers, the Department will submit to the CMS an amendment to the existing 1915 DD waiver to identify affiliation as an administrative function that will be performed by the agency through a contract with a private entity. Groom Decl. ¶ 15. The Department will further request in that the waiver amendment be made retroactive to August 5. *Id.*

## APPLICABLE RULE 65 STANDARDS

The Court of Appeals recently adopted a district court decision denying entry of a preliminary injunction under Fed. R. Civ. P. 65. *Vanguard Outdoor, LLC v. City of Los Angeles*, No. 10-56635, 2011 WL 2175891 (9th Cir. June 3, 2011). As the lower court explained, although *Winter v. Natural Resources Defense Council, Inc.,* 129 S. Ct. 365, 374 (2008), reiterated that "'plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of hardships tips in his favor, and that an injunction is in the public interest[,]' . . . [t]his recitation of the requirements for a preliminary injunction did not completely erase the Ninth Circuit's 'sliding scale' approach." 2011 WL 2175891, at *3. The district court then quoted from *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1053 (9th Cir. 2010), for the principle that "'serious questions going to the merits' and a hardship balance that tips sharply in the plaintiff's favor can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." 2011 WL 2175891, at *id.* *Winter* emphasized the need for a high degree of "likelihood" with respect to the harm element of the four-part test when it parted ways with the underlying Ninth Circuit decision and held that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a *clear*

*showing* that the plaintiff is entitled to such relief." 129 S. Ct. at 375-76 (emphasis added).

## ARGUMENT

I. **KNAPP IS NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE HE ASKS THIS COURT TO PRETERMIT THE CMS'S ABILITY TO MAKE THE 1915 DD WAIVER AMENDMENT RELATING TO THE AFFILIATION PROCESS RETROACTIVE—RELIEF THAT IS BARRED BY SOVEREIGN IMMUNITY AND PRIMARY JURISDICTION PRINCIPLES**

Although Knapp apparently contends that the freedom-of-choice provision in 42 U.S.C. § 1396a(a)(23) precludes Idaho from implementing any "selective contract for Residential Habilitation Program Coordination" (Dkt. 1 ¶ 25), the principal issue for present purposes is not the ability of Idaho to request, and have accepted, the amendment but whether the CMS has authority to make any such amendment effective as of August 5, 2011.[1] Nothing in the Medicaid statutes, including most particularly the HMCS waiver provision in 42 U.S.C. § 1396n(c), precludes the CMS from so approving, and nothing in the agency's regulations constrains its discretion in that respect.

The lack of statutory or regulatory limitation on CMS authority to make waiver amendments retroactive contrasts with Ninth Circuit precedent establishing that amendments to State Plans may not be implemented prior to its approval. *E.g.*, *Exeter*

---

[1] For purposes of resolving the preliminary injunction motion, Defendants do not contest the availability of a private right of action under § 1396a(a)(23) to challenge implementation of the Community Partnership contract. *See Susan J. v. Riley*, 254 F.R.D. 439, 451 (M.D. Ala. 2008); ("The HCB Waiver programs are optional services. While it is true that the Waiver program is governed by an agreement between the state and the federal government, "when a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law"); *accord Susan J. v. Riley*, 616 F. Supp. 2d 1219, 1246-47 (M.D. Ala. 2009). Defendants therefore do not believe that it is necessary for this Court to rely on the Supremacy Clause claim for relief. They do observe, however, that the validity of the Ninth Circuit's several decisions in the *Maxwell-Jolly* litigation is currently pending before the United States Supreme Court on writs of certiorari that have been consolidated for oral argument purposes. *See Douglas v. Ind. Living Ctr. of S. Cal., Inc* 131 S. Ct. 992 (2011) (No. 09-958); *Douglas v. Cal. Pharm. Ass'n*, 131 S. Ct. 992 (2011) (No. 09-1158); *Douglas v. Santa Rosa Mem'l Hosp.*, 131 S. Ct. 996 (2011) (No. 10-283).

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 7

*Mem. Hosp. v. Belshe*, 145 F.3d 1106, 1108 (9th Cir. 1998) (rejecting contention that 1980 "Boren Amendments" altered existing Circuit precedent which "was premised on the overall statutory framework rather than the particular language of the statute relating to amendments to state plans"—a "framework required then, and at all relevant times since, that all plans receive approval by the federal government before they may be implemented, and that all amendments to plans must also be federally approved"); *see also Cal. Hosp. Ass'n v. Maxwell-Jolly*, Civ. No. 10-3465 FCD/EFB, 2011 WL 836706, at *15 (E.D. Cal. Mar. 4, 2011) ("the Ninth Circuit has repeatedly held that even where proposed amendments to the State Plan are *submitted* for federal approval, a state Medicaid agency may not *implement* the amendments until federal approval is actually obtained").

The CMS's "Instructions, Technical Guide and Review Criteria" Manual (Jan. 2008) ("CMS Manual" or "Manual") with respect to HCBS 1915 waivers addresses the retroactivity issue.[2] The Manual provides in part that a 1915 waiver "may be made retroactive to the first day of a waiver year (or another date after the first date of the waiver year) in which the amendment is submitted unless the amendment would result in a reduction of the number of persons served, services provided or providers." Grooms Decl., Ex. B (CMS Manual at 30-31). These are issues for the CMS to resolve, but the relief requested would negate as a practical matter the agency's authority to determine the retroactivity issue. The situation here thus differs markedly from the situation presented to the Ninth Circuit in *Exeter Memorial Hospital* or the district court in *California Hospital Association*. Because the CMS has responsibility for resolving the question whether the waiver amendment upon approval should take effect on August 5, 2011, this Court should refrain from disrupting the scheme established by the agency for purposes

---

[2] The Manual appears in its entirety at http://www.dads.state.tx.us/providers/waiver_instructions/cms_waiver_instructions.pdf (last visited Jul. 14, 2011). *See* Grooms Decl. ¶ 3 & Ex. B (CMS Manual excerpts).

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 8

of carrying out its 1915(c) HCBS waiver duties.[3] Both sovereign immunity and primary jurisdiction require this conclusion.

Although the *California Hospital Association* court held a Medicaid waiver embodies a contractual relationship between the United States and the involved State (*Cal. Hosp. Ass'n*, 2011 WL 836706, at *18), that conclusion is suspect in light of the Supreme Court's subsequent decision *in Astra USA, Inc. v. Santa Clara County*, 131 S. Ct. 1342 (2011). *See id.* at 1348 ("[a] third-party suit to enforce an HHS-drug manufacturer agreement . . . is in essence a suit to enforce the statute itself"). However, even if it is assumed that Knapp is an "intended beneficiary" of the 1915 DD waiver by virtue of his status as participant, the fact remains that he seeks relief that would affect the CMS's ability to discharge its contractual and regulatory obligation to pass upon any aspect of the proposed amendment—as the complaint alleges when read literally—or at the least on the retroactivity issue—as the preliminary injunction motion effectively seeks. Under long-standing decision authority, however, the CMS must be joined as a defendant under Fed. R. Civ. P. 19(a) because "in an action to set aside a contract, all parties to the contract must be present." *Natural Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1185 (E.D. Cal. 2008). This rule applies with no less force when, as presently, a third party attempts to interfere with a significant undertaking embodied in

---

[3] Defendants anticipate that Knapp will argue in the reply to this memorandum that retroactive approval of the waiver application would be improper under the CMS criteria. They would only note that the Department will request retroactive treatment because (1) no reasonable dispute exists that the number of persons serviced will be reduced; (2) the function affected—affiliation—remains constant and simply will be transferred from one waiver classification to another; and (3) the number of "providers" will not be diminished because the CFH provides the direct residential habilitation service to the participant, not the RHA with which the CFH provider is affiliated. It also bears noting that the number of RHAs themselves will not be diminished by the transfer of affiliation to an administrative function; their certifications remain unaffected, and they will continue to perform "supported living" services for participants who reside in their own homes. This Court, in any event, should not enmesh itself into the merits of the retroactivity issue given the sovereign immunity and primary jurisdiction barriers to Knapp's claim.

the contract. *Id.* (citing *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)). It is no less plain that the CMS cannot be joined given the United States' immunity from suit unless "unequivocally expressed" by Congress. *Lane v. Peña*, 518 U.S. 187, 192 (1996); *see also Orff v. United States*, 545 U.S. 596, 601-02 (2005) ("a waiver of sovereign immunity must be strictly construed in favor of the sovereign"); *Harger v. Dep't of Labor*, 569 F.3d 898, 903-04 (9th Cir. 2009) (summarizing decisions). Knapp does not, and cannot, identify any such statutory provision.

The Ninth Circuit, of course, has given broad application to the waiver of sovereign immunity in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (*e.g.*, *Gros Ventre Tribe v. United States*, 469 F.3d 801, 808-09 (9th Cir. 2005)), but the CMS has taken *no* action instantly to which the waiver in § 702 could apply; *i.e.*, there is neither a constitutional nor an APA-based challenge involved here. *See Veterans for Common Sense v. Shinseki*, No. 08-16728, 2011 WL 1770944, at *16 n.22 (9th Cir. May 10, 2011). The criteria in Fed. R. Civ. P. 19(b), in turn, would compel the complaint's dismissal by virtue of the weight attendant to the sovereign immunity interest. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) (reviewing earlier Rule 19 joinder decisions, and concluding: "A case may not proceed when a required-entity sovereign is not amenable to suit. These cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign").

Knapp's analytical difficulties do not end with—or, if no "contract" theory exists, implicate—the CMS's sovereign immunity. Even were the agency's immunity from suit not present, principles of primary jurisdiction would counsel the motion's denial. As the Court of Appeals explained in *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1337

1337 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 1342 (2011), "[t]he doctrine of primary jurisdiction 'is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.'" *Id.* at 1252 (quoting *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)). The factors considered in assessing the propriety of the doctrine's invocation are "'(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'" *Id.* at 1252 (quoting *Syntek*, 307 F.3d at 781). Also relevant is "the procedural posture of the case." *Id.*

Here, Knapp asserts a claim that would preclude the CMS from considering the proposed waiver amendment at all or, more narrowly read, would prevent the agency from exercising its authority to make the amendment retroactive to August 5, 2011. Either reading of the complaint constitutes a frontal assault on the exercise by the CMS of its responsibility to administer the Medicaid statute. This is not an instance where "the complaint plausibly asserts a claim that would *not* implicate the [primary jurisdiction] doctrine." *County of Santa Clara*, 588 F.3d at 1252. It is instead an instance where the complaint unabashedly seeks to disrupt the orderly disposition of a 1915 DD waiver amendment submission. This Court needs no "factual development" to so determine. *Id.*[4] There is, as well, no legitimate question that "'an issue of first impression'"—at least from a judicial perspective—exists with respect to application by the CMS of its policy

---

[4] In the *County of Santa Clara* litigation, the United States submitted an amicus brief before the Ninth Circuit in which it opined that the primary jurisdiction doctrine should not be applied at the then-nascent stage of the litigation because "[t]here [was] insufficient information to justify invoking the doctrine at this juncture." *County of Santa Clara v. AstraZeneca Pharmaceuticals LP*, No. 09-15216, 2009 WL 4089524, at 13 (9th Cir. Oct. 27, 2009). As discussed above, no such concern exists here.

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 11

concerning waiver amendment retroactivity. *Id.* at 1251 (quoting *Syntek*, 307 F.3d at 780) (some internal quotation marks omitted).

## II. KNAPP FAILS TO ESTABLISH THE LIKELIHOOD THAT HE WILL SUFFER IRREPARABLE HARM THROUGH IMPLEMENTATION OF THE COMMUNITY PARTNERSHIP'S CONTRACT

The chief, if not the exclusive, source of actual injury asserted by Knapp is the "scope of work" provision that requires Community Partnerships to "[c]omplete at least one (1) annual face to face interview with the CFH provider and participant." Dkt. 2-7 at 11 (Scope of Work § IV.A.1.d); *see* Dkt. 2-1 at 10-11. That assertion ignores the careful inclusion of the modifier "at least" that establishes the annual meeting as a minimum. *See* Grooms Decl. ¶ 16. Other requirements in the scope of work requirements impose on Community Partnerships the responsibility to monitor on an on-going basis the implementation of each participant's program implementation plan. *Id.* Indeed, Knapp's criticism of the alleged shortcomings in the contract represents another attempt to have this Court inquire into programmatic matters that he should raise before the CMS in connection with disposition of the waiver amendment application and the Department's request for an effective date of August 5, 2011. What can be said at this point with certainty is that the actual harm that purportedly will be visited upon Knapp is highly, if not entirely, speculative and therefore insufficient under *Winter*'s "clear showing" admonition. 129 S. Ct. at 375. So, for example, even were the amendment approved to take effect prospectively, nothing in Knapp's preliminary injunction showing suggests that his overall interests would be advanced materially by an effective date of January 1, 2012, rather than August 5, 2011.

Knapp's suggestion that the alleged violation of the freedom of choice provision in § 1396a(a)(23) is, standing alone, an adequate basis for establishing irreparable injury is farfetched. Dkt. 2-1 at 10. Such an approach merges the likelihood of success and the irreparable injury components of the four-element test—a merger that the Court of

Appeals has recognized would be improper. *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 474-75 (9th Cir. 2010) (rejecting abuse of discretion claim because of alleged conflation of "the merits and likelihood of irreparable harm inquiries" where "the district court correctly analyzed the likelihood of irreparable harm in sufficient depth without impermissibly conflating this with the other required factors"). Although entry of a permanent injunction in the wake of a *final* determination that a "federal right[] created by the Medicaid Act" (Dkt. 2-1 at 10) may be appropriate as a supplement to declaratory relief without the need to prove actual injury, preliminary injunctions are an "extraordinary remedy" (*Winter*, 129 S. Ct. at 376) precisely because they grant a coercive remedy prior to disposition of the controversy's merits; *i.e.*, they typically issue under substantial time constraints and without the court's or the parties' ability to develop a full record. *Cf. Global Horizons, Inc. v. USDOL*, 510 F.3d 1054, 1058-59 (9th Cir. 2007) ("[b]ecause of our limited scope of review and the paucity of the factual record on a preliminary injunction application, our disposition 'may provide little guidance as to the appropriate disposition on the merits' and will often 'result in unnecessary delay to the parties and inefficient use of judicial resources'"). Aside from his misapprehension of the manner in which the first two preliminary injunction factors should be applied, Knapp's position is compromised under his approach by the weakness of his claim on the merits: The CMS has authority not only to grant the waiver amendment but also to make its action retroactive.

### III. A SUBSTANTIAL PUBLIC INTEREST EXISTS IN NON-INTERFERENCE WITH THE FEDERAL-STATE PARTNERSHIP CREATED UNDER THE MEDICAID ACT, AND THAT INTEREST OUTWEIGHS THE ACTUAL INJURY CLAIMED BY KNAPP

No dispute exists over the importance of the relationship established under Medicaid statutes between the Federal Government and the States and that the HCBS waiver alternative is an integral part of this relationship. *See Townsend v. Quasim*, 328 F.3d. 511, 519 (9th Cir. 2003) ("[t]hrough the Medicaid waiver program, Congress

has encouraged states to experiment with providing medical care in community- and home-based settings for the categorically needy"). Medical assistance in connection with the Medicaid statute and the waiver system accounts for a significant share of Idaho's budget. *Facts Figures Trends 2010-2011*, at 12-13 (Idaho Dep't Health and Welfare) ($1.55 billion SFY 2011 appropriation for Division of Medicaid, of which 74 percent derives from federal funds and which constitutes 77.7 percent of IDHW's overall budget), *available at* http://www.healthandwelfare.idaho.gov/LinkClick.aspx?fileticket=6skMs2K-sgk%3d&tabid=62&mid=818 (last visited Jul. 19, 2011). It is thus essential that administrative processes attendant to the Medicaid system be left unimpaired by judicial oversight except in the most unusual of circumstances. Knapp thus brings before the Court a grievance properly addressed through the CMS's review of Idaho's waiver amendment application.

Balanced against these strong policy and institutional interests are Knapp's very suspect allegations of actual harm. The mere fact that he or other 1915 DD waiver participants might prefer their CFH providers to affiliate with an RHA other than Community Partnerships says nothing about whether, absent such affiliation, irreparable injury will occur *pendente lite*. Legal injury, as discussed above, is not only likely lacking but also cannot substitute for the dearth of any showing that actual injury is likely.

## CONCLUSION

The motion for preliminary injunction should be denied.

DATED this 19th day of July, 2011.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By: *Clay R. Smith*
CLAY R. SMITH
Deputy Attorney General

MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of July, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and serviced a copy of said document upon all parties by the method listed below:

***Attorneys for Plaintiffs***          ☒ CM/ECF
James M. Piotrowski
Marty Durand
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
824 W. Franklin Street
Boise, ID 83701

                                               *Clay R. Smith*
                                               CLAY SMITH
                                               Deputy Attorney General